UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DUANE MIMS,

Plaintiff,

Case # 13-CV-6405-FPG

v.

DECISION AND ORDER

C. YEHL, CAPTAIN, and
LUCILLE SCHINDLER, C.O.,

Defendants.

---

DUANE MIMS,

Plaintiff,

Case # 14-CV-6304-FPG

v.

DECISION AND ORDER

C. YEHL, CORRECTIONS CAPTAIN, and
LUCILLE SCHINDLER, C.O.,

Defendants.

---

DUANE MIMS,

Plaintiff,

Case # 14-CV-6305-FPG

v.

DECISION AND ORDER

BRIAN FISCHER, COMMISSIONER,

Defendant.

---

*Pro se* Plaintiff Duane Mims has brought three related suits under 42 U.S.C. § 1983, alleging that Defendants, who were or are employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), violated his constitutional rights.  The Complaints all stem from an incident that occurred on or about August 10, 2012, where Plaintiff alleges that two of the named Defendants utilized excessive force against him, and afterwards,

Plaintiff was sentenced to 36 months of disciplinary confinement, which he contends is unconstitutionally long. Because Plaintiff failed to exhaust his administrative remedies before commencing these actions, Defendants' Motions for Summary Judgment are granted, and these cases are dismissed with prejudice.

BACKGROUND

On May 2, 2013, Plaintiff commenced two separate actions in the Northern District of New York: *Mims v. Yehl*, N.D.N.Y. Case No. 13-CV-508 ("*Mims I*"), and *Mims v. Fischer*, N.D.N.Y. Case No. 13-CV-509 ("*Mims II*").

In *Mims I*, Plaintiff alleged that on August 10, 2012, while he was an inmate at Gowanda Correctional Facility, he was assaulted by the two Defendants in that case, identified as Captain C. Yehl and Corrections Officer Lucille Schindler. Plaintiff was charged with misbehavior, and was afforded a disciplinary hearing where Defendant Yehl was the hearing officer. Defendant Yehl found Plaintiff guilty, and sentenced him to 36 months in the Special Housing Unit ("SHU"), along with the loss of certain privileges. Plaintiff further alleged that Defendant Yehl violated his due process rights, and that his sentence of 36 months in the SHU was unconstitutionally long.

In *Mims II*, Plaintiff alleged that African-American and Latino inmates were being targeted by the Commissioner of DOCCS for long term isolation, and that 3,000 such individuals are serving over one year in solitary confinement. The only named Defendant in that case was Brian Fischer, who at the time was the Commissioner of DOCCS. Plaintiff further alleges that any disciplinary sentence of over one year constitutes cruel and unusual punishment. Although not specifically stated, the implication is that Plaintiff was challenging his own 36 month disciplinary sentence, as well as the disciplinary sentences imposed upon some 3,000

individuals.   Plaintiff requested relief in the form of having any disciplinary sentence of 24 months and over reduced to 12 months, and also requested "$3,000.00 for each inmate."

On August 5, 2013, Plaintiff commenced *Mims v. Yehl*, W.D.N.Y. Case No. 13-CV-6405 ("*Mims III*") in the Western District of New York, and that action was assigned to this Court. *Mims III* names the same Defendants as *Mims I*, and both *Mims I* and *Mims III* allege the same underlying facts regarding the August 10, 2012 incident and the subsequent disciplinary hearing. In commencing *Mims III*, Plaintiff utilized this district's form complaint, and despite having commenced *Mims I* and *Mims II* in the Northern District just three months prior, he falsely indicated on his Complaint in *Mims III* that he had not "filed any other lawsuits in any state and federal court relating to [his] imprisonment." The next section of the form complaint directs the Plaintiff to provide details regarding any previously filed lawsuits, and the Plaintiff wrote "N/A" in each of the spaces where he should have identified the details of his other lawsuits.

On October 9, 2013, United States District Judge for the Northern District of New York Mae D'Agostino found common issues of fact in *Mims I* and *Mims II*, ordered the consolidation of those cases, and ordered that all filings in the now-consolidated cases be docketed under *Mims I*. Judge D'Agostino further dismissed any claims in *Mims II* that purported to be brought as a class action on behalf of other inmates, and allowed Plaintiff's claims in *Mims II* to proceed only as they pertained to his own situation.

On January 10, 2014, Defendants filed a Motion for Summary Judgment in *Mims I* and *Mims II*, arguing that the Plaintiff failed to exhaust his administrative remedies prior to commencing those lawsuits.   Alternatively, Defendants moved to transfer venue in *Mims I* and *Mims II* from the Northern District of New York to the Western District of New York, as the underlying facts took place within the Western District.   On January 27, 2014, Defendants filed a

similar Motion for Summary Judgment in *Mims III*, which also argued that the Plaintiff failed to exhaust his administrative remedies prior to commencing that lawsuit. The Defendants further requested that the Court defer ruling on the motion in *Mims III* until the Northern District of New York ruled on the pending Motion for Summary Judgment and/or Motion to Transfer Venue in *Mims I* and *Mims II*.

By Decision and Order dated May 19, 2014, United States Magistrate Judge for the Northern District of New York Andrew Baxter granted the Defendants' Motion to Transfer Venue, and ordered *Mims I* and *Mims II* transferred to the Western District of New York. Magistrate Judge Baxter further ordered that the Summary Judgment Motion would remain pending, and would be transferred to the Western District of New York for disposition. Upon receipt of that order, the Clerk of the Court for the Western District of New York docketed *Mims I* as W.D.N.Y. Case No. 14-CV-6304, and docketed *Mims II* as W.D.N.Y. Case No. 14-CV-6305.

As a result, this Court currently has three cases before it brought by Plaintiff: the consolidated *Mims I* and *Mims II* cases, although they each have their own docket number, and *Mims III*. Pending before the Court is the Defendants' Motion for Summary Judgment in each of these three actions, which all seek dismissal of these cases on the basis that the Plaintiff failed to exhaust his administrative remedies before commencing suit. *See Mims I*, Dkt. # 49, *Mims III*, Dkt. # 23. Plaintiff has responded to the motions, and the Court deems oral argument to be unnecessary. For the following reasons, Defendants' Motions for Summary Judgment are granted, and these cases are dismissed with prejudice.

## DISCUSSION

The standard for ruling on a summary judgment motion is well known. A party is entitled to summary judgment "if the movant shows that there is no genuine issue as to any

4

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(a). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986) (internal quotation marks omitted).

When considering a motion for summary judgment, all genuinely disputed facts must be

resolved in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In order

to establish a material issue of fact, the non-movant need only provide "sufficient evidence

supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the

parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248-49 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89

(1968)). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the

proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. Ltd.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory

committee's note on 1963 amendments). If, after considering the evidence in the light most

favorable to the non-moving party, the Court finds that no rational jury could find in favor of that

party, a grant of summary judgment is appropriate. *Scott*, 550 U.S. at 380 (citing *Matsushita*,

475 U.S. at 586-587).

Because the Plaintiff is proceeding *pro se,* his pleadings are held to "less stringent

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(internal quotation marks omitted). Accordingly, I will interpret Plaintiff's submissions "to raise

the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

The Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to

commencing these lawsuits, and as a result, his Complaints cannot proceed. I agree.

Under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). If an inmate fails to exhaust their administrative remedies, they are barred from commencing a federal lawsuit. *Martin v. Niagara County Jail*, No. 05–CV–00868(JTC), 2012 WL 3230435, at *6 (W.D.N.Y. Aug. 6, 2012). In other words, to commence a lawsuit "prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself." *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012). Exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). To be "[p]roper," exhaustion must comply with all of the agency's "deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90–91.

To satisfy the PLRA's exhaustion requirement, an inmate in New York is generally required to follow the prescribed DOCCS grievance procedure, which is set forth at 7 N.Y.C.R.R. § 701.5. In short, a prison inmate's administrative remedies consist of a three-step grievance and appeal procedure: (1) investigation and review of the grievance by the Inmate Grievance Resolution Committee ("IGRC"), which is comprised of inmates and DOCCS employees; (2) if appealed, review of the IGRC's determination by (or, if the committee is unable to reach a determination, referral to) the superintendent of the facility; and (3) if the

superintendent's decision is appealed, review and final administrative determination by the Central Office Review Committee ("CORC"). *See Id.* All three steps of this procedure must ordinarily be exhausted before an inmate may commence suit in federal court. *See Morrison v. Parmele*, 892 F. Supp. 2d 485, 488 (W.D.N.Y. 2012) (citing *Porter*, 534 U.S. at 524).

In his Complaint and Amended Complaint filed in *Mims III*, Plaintiff states that he filed a grievance, but claims he "never received a response." *Mims III*, Dkt. ## 1, 5. In his Response to the Defendants' Summary Judgment Motion, Plaintiff provides two different explanations. First, he states that he "filed five grievances on 12 June 2012, 03 April 2012, 19 May 2012, 29 July 2012 and 01 August 2012" and that he never received a disposition from these grievances. *Mims I*, Dkt. # 51. Second, he alleges that "grievances and complaints against staff at Gowanda Correctional Facility has (sic) the tendency of disappearing, or are tampered with." *Id., see also Mims III*, Dkt. # 32.

Reading his submissions as a whole, Plaintiff does not appear to allege that he filed a grievance regarding the August 10, 2012 incident that is the subject of his Complaint. Indeed, the five grievances he claims to have filed all predate August 10, 2012, the date of the incident alleged in these cases. Rather, he alleges that he had *past* problems with the grievance procedure, and that he did not receive responses to prior grievances that he filed in unrelated matters. Even assuming *arguendo* the truth of those allegations, they are irrelevant as there is no evidence in the record to even suggest – much less demonstrate – that Plaintiff even attempted to comply with the grievance procedure as it relates to this action.

To the extent that Plaintiff *is* attempting to claim that he filed a grievance regarding the August 10, 2012 incident, there is nothing in the record to support such a claim. Plaintiff could have produced a copy of the alleged grievance regarding the August 10, 2012 incident, but instead, he provided nothing. Plaintiff's allegations, to the extent he claims to have submitted a

grievance regarding the August 10, 2012 incident, therefore "stand alone and unsupported," *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004), and such an unsupported statement is insufficient at the summary judgment stage. Further, Plaintiff's wholly conclusory and unsupported allegations that grievances are tampered with at Gowanda Correctional Facility do not create a material issue of fact in this case. *Rosado v. Fessetto*, No. 09–CV–0067 (DNH/ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) ("Courts have consistently held ... that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."), *adopted by* 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010).

On the other hand, Defendants have submitted proof in admissible form by way of affidavits from Joseph Chisholm, Brandi Collyer and Kadie O'Connell, who are the Inmate Grievance Program Supervisors at Attica Correctional Facility, Upstate Correctional Facility, and Gowanda Correctional Facility, respectively[1]. These three affidavits establish that the only grievance from Plaintiff on file with any of these facilities was filed in 2012, and related to bunk beds – a matter wholly unrelated to the allegations in this case. Plaintiff has not provided any facts or documents to challenge these statements *as they relate to this case* – meaning relating to the August 10, 2012 incident – and as a result, there is no dispute that Plaintiff did not file a grievance regarding the August 10, 2012 incident. Plaintiff's failure to file a grievance is fatal to his cases, and Defendants are entitled to summary judgment on this basis alone. *Curry v. Mazzuca*, No. 05 Civ. 1542 (NRB), 2006 WL 250487, at *6 (S.D.N.Y. Feb.2, 2006) (dismissing plaintiff's claim as "there [was] no evidence whatsoever that such a grievance was actually filed with a grievance clerk or ignored by prison officials.")

---

[1] The three separate affidavits from three separate facilities are due to the fact that Plaintiff was transferred from Gowanda Correctional Facility to Attica Correctional Facility on August 10, 2012, the date of the alleged incident, and then to Upstate Correctional Facility on August 31, 2012, where he remained until at least October 2012, at which time the time period for Plaintiff to file a grievance relating to the August 10, 2012 incident had expired. *See* 7 N.Y.C.R.R. § 701.5.

Although Plaintiff failed to comply with DOCCS' grievance procedure, in interpreting Plaintiff's papers liberally, he argues that he should be excused from the exhaustion requirement. Plaintiff claims that "on August 12, 2012, two days after the attack, [Plaintiff] wrote a letter to Defendant Brian Fischer who was the Commissioner and to the Inspector General" regarding his allegations. *Mims I*, Dkt. # 53. Plaintiff did not attach a copy of this correspondence, but even if I assume that such a letter were indeed sent to the Inspector General or to the Commissioner, the outcome would not change.

Plaintiff's argument that his letters or communications with DOCCS officials should serve as a substitute for filing a grievance fails because "decisions in this circuit have repeatedly held that complaint letters to the DOCCS commissioner or the facility superintendent do not satisfy the PLRA's exhaustion requirements." *Muhammad v. Pico*, No. 02 Civ. 1052 (AJP), 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003) (collecting cases). The same is true for letters sent to the Inspector General's office. *See, e.g., Stephenson v. Dunford*, 320 F. Supp. 2d 44, 46, 52 (W.D.N.Y. 2004) (finding no exhaustion where inmate complains directly to Inspector General), *vacated on other grounds*, 139 F. App'x 311 (2d Cir. 2005); *Thomas v. Cassleberry*, 315 F. Supp. 2d 301, 303-04 (W.D.N.Y. 2004). As one Court observed, "[t]he Second Circuit has made clear that even if prison officials have notice of a prisoner's claims as a result of such informal communications, the purposes of the PLRA's exhaustion requirement can only be realized through strict compliance with the applicable administrative procedures." *Mamon v. New York City Dep't of Corr.*, No. 10 Civ. 3454 (NRB), 2012 WL 260287, at *4 (S.D.N.Y. Jan. 27, 2012) (citing *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007)).

Going one step further, even if I had been presented with evidence to demonstrate that Plaintiff had filed a grievance with the facility regarding the August 10, 2012 incident, the Defendants would still be entitled to summary judgment in these actions.

Defendants have submitted an affidavit from Jeffrey Hale, the Assistant Director of DOCCS Inmate Grievance Program. *Mims III*, Dkt. # 23; *Mims I*, Dkt. # 49.   In his affidavit, Hale states that he is the custodian or records for the CORC, and in that capacity, has access to records of all grievance appeals received at CORC since 1990.  Hale's affidavit further states that although Plaintiff had filed an appeal of a grievance with the CORC in the past (in 2010, relating to an allegation that his bed was warped and regarding concerns with his housing location), no appeal exists relating to the alleged August 10, 2012 incident.   This evidence, which is uncontroverted by Plaintiff, establishes that no such appeal ever existed at the CORC.  Assuming that Plaintiff did file a grievance regarding the August 10, 2012 incident, Plaintiff was still required to file an appeal with the CORC even if he never received a decision on the grievance he claims to have filed.  *Williams v. Hupkowicz*, No. 04–CV–0051, 2007 WL 1774876, at *4 (W.D.N.Y. June 18, 2007) ("Even assuming that an inmate received no timely official response as contemplated by the regulations to a grievance at any stage in the inmate grievance process, the inmate could nevertheless appeal such grievance to the next level, and the failure to do so constitutes a failure to exhaust his administrative remedies as required under the PLRA."); *see also Hecht v. Best*, No. 12 CIV. 4154 (CM), 2012 WL 5974079 (S.D.N.Y. Nov. 28, 2012).

While I am aware that non-exhaustion can be excused under certain circumstances, *see Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), there is simply no basis to excuse Plaintiff's failure to exhaust his administrative remedies in this case.  Plaintiff had the ability to file a grievance regarding his allegations, but chose not to do so.  There is no allegation – much less any evidence – that Plaintiff was in any way prevented from accessing the grievance process as it relates to this incident, and despite his arguments to the contrary, there are no special circumstances that justify the Plaintiff's failure to comply with the DOCCS grievance

procedures.  As a result, Plaintiff's failure to exhaust his administrative remedies is fatal to these actions, and the Defendants are entitled to summary judgment.

CONCLUSION

Defendants' Motions for Summary Judgment (*Mims I*, Dkt. # 49; *Mims III*, Dkt. # 23) are GRANTED and these actions are dismissed with prejudice.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Any request to proceed *in forma pauperis* on appeal should be directed by motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk of the Court is directed to terminate *Mims I*, *Mims II*, and *Mims III*.

IT IS SO ORDERED.

DATED:    September 22, 2014
          Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge